Good morning, Justices. Judges. We are actually only judges. Judges. The issue presented here for review is whether the district court erred in granting the government's motion for summary judgment. The district judge basically relied on several statements that my clients gave during the course of this matter. My clients are immigrants, they're individuals, they'd accumulated quite a bit of money through savings. Client Abraham was the one who kept the money. There was a burglary that occurred at their home, invaders came in, tied them up, search warrant subsequent to that found a safe that contained a substantial amount of money. So I have two questions for you and one of them may not be in the record and so feel free to just tell me it's not in the record. But the first is in some ways just a comment. When you look at these exchanges between the officers and both of them, they do seem to be initially disclaiming very clearly that they have anything to do with what's in this box. And so I think what concerned the district court was how you could first at one moment say, you know, it's not my box, I don't know anything about it and then the next moment say, oh but actually it's my money in the box. The other question, I just wonder whether the record shows whether they are legal permanent resident aliens or citizens or undocumented or do we know anything about that? They are not they are not citizens. They are applying for citizenship but they are not documented citizens. Okay. With regards to the first issue, the only person to talk to the police that night was my client Pedro. Abraham was not there and what he said and what he ultimately testified to was that he didn't know what Abraham did with the money. They would cash checks, they would get paid, factory workers, they would take the money, he would take the money, Abraham would take the money, they would pool it, he would, Abraham would then put it in this safe. Which Pedro did not know where he put it. So when Pedro says to the police, I really don't know what's in that box or in that I don't know what Abraham is doing with that money. He's my brother, I trusted him with it, he could do whatever he wanted with it except we were saving it. And we were saving it for a variety of reasons. There's a ledger that's mentioned in the record. The ledger would seem to indicate that this is some sort of drug transaction and that sort of thing. In their depositions they indicated that that ledger was for a home they were building for their mother. So this ledger is in the record? We can look at it? It's in the deposition testimony. Okay. And it's referenced as a ledger that is in pesos, not United States dollars, and has to do with the home and the building of a home for their mother in Mexico. So when the intruders come in and I think one of the things the judge finds that militates against my clients was that there was some addition of drug activity. There was a gun that was found there, the record will show during the depositions that the home invaders left that gun there. They didn't have a gun, it was left there by the home invaders. Why they did it we have no idea, but they did. There was some indicia that there was white powder on a digital scale, that there were Ziploc bags with zip ties. Well as you can imagine, these guys are working stiffs, these guys take their lunch to work. The to find in their kitchen. You may have them in your own kitchen. The digital scale is what the white powder is flour. No lab results were done, there's no finding of any cocaine, there's no finding of any illegal substance, with the exception of a gram or so of cannabis that's found in somebody's bedroom. Not Abraham's and not Pedro's. Yet the judge chooses to believe that those are indicia of some sort of illegal drug activity. So maybe the big question here is really a process question of who has the burden of proof whether this is really appropriate for summary judgment. Maybe you could talk about it from that point of view for a minute. I think the case that your honors or your judges have decided that $239,000 really kind of speaks to that. And it basically says CAFRA right now does not shift the burden to the people that are claiming the money. The burden is on the government, it stays on the government to determine that there's some illegal activity. To do what this judge has done here would shift the burden to my clients to show that these were legitimate, that these shouldn't be forfeited. Yet that's not what happened. Excuse me, that is in fact what happened. So the burden of proof remains on the government, it never shifts to my clients. It's on the laws that I'm reading and the statute does not shift to the litigants or the claimants in this matter. What about the dog sniff? Well the dog sniff was on the the car. And although we haven't really gotten to that, you have a contamination theory that I think you folks have addressed that shows that they're going to find a lot of dog sniffs on a lot of money that may or may not be illegal activity or illegal drugs. Yeah it did alert to that, it did. But I don't understand that. There was no finding of any drugs in that vehicle whatsoever. I don't understand. You know we have this case United States versus 36,600, long opinion that relies on a lot of scientific information for the proposition that the dog won't alert unless there's very substantial cocaine because the odors that attract the dogs fade rapidly. So if you only have a small amount of cocaine by the time the dog appears they won't sniff anything. I think the case of $100,000 and 100 speaks to that as well and it basically finds that that the dog sniff may or may not be, it's not the gold standard of determinations whether there's actually drugs there. There's no evidence here about whether this dog was reliable. So one theory is the dog alerts only when there's enough cocaine. The other is the dog alerts when the dog's been properly trained to alert when there really are drugs there instead of alerting for goodies that it gets every time it alerts or something like that. I think that's true but for our purposes I'm not sure that's critical in the scheme of things to make a determination whether my clients have standing to maintain the ownership in their money. The question then may be is it legitimately tied with a criminal activity or a drug-related activity but that's something for a trier of the fact to determine. Not I think for purposes of summary judgment. Summary judgment is just to determine whether they have a legitimate interest. Whether they have standing and a legitimate interest in this money to have the case go forward to have a trier of the fact make that Now what's your response about the dog sniff? My response to that is I think that's for the trier of the fact to determine whether that's legitimate or not. That would go to the question whether the money is related to drug trafficking right? That's the issue that that would be relevant to. Yes but that doesn't go to where. You might introduce evidence that this dog alerts a hundred percent of the time. Correct. So it would go towards the determination and not whether summary judgment should lie. Okay if you want to say a bit of rebuttal you're free to do so. Mr. Ebert. Good morning may it please the court, counsel. My name is Matthew Ebert appearing on behalf of the United States. I do want to address a few points at the here today. For instance, the dog sniff. These go to the forfeitability of the proceeds. That's not what this appeal is about. That's not what was raised in contention by the claimants in the district court and that's not the basis of their appeal. The only basis of their appeal is that the first prong of the court's findings for summary judgment would have to do whether or not the claimants met their requisite burden of proof as to their ownership interest. Why did they have to prove the ownership? Because 980 18 United States Code 983C. More than that is it the position of the government that if they find a large amount of money under suspicious circumstances they can seize it and force whoever they're claiming it to prove their ownership? That is not the position of the United States. The position of the United States. I should hope not. The position of the United States is the burden to establish the forfeitability of funds begins and ends with the government and here the government marshaled the evidence presented it to the district court on an array of it. It's a summary judgment thing that the court can decide factual issues that might be a dispute as for instance who owns the money and why? Correct, and in this instance looking scrupulously at the applicable Seventh Circuit case law on the issues the district court found that there were not factual disputes to deny summary judgment to the government on the issue of forfeitability. Well that's the issue before us whether or not she was right. Yeah and that is the issue before us and the thing is I mean her premise seemed to be that by one interpretation of the that it's not his money I guess except that there are other interpretations of the record under which he doesn't even find out that that was where Abraham had been putting the money until after the police leave and the other interesting thing about this case is the arithmetic actually works out in their favor the amount of money they earned over the years looking at the evidence in the record how much was in the safe how much might might you be sending to or hoping to send to Mexico for this house it's all possible so I don't know that it's summary judgment material they they they do present evidence that it is their legitimate earnings despite whatever confused things Pedro may have said initially. The remaining item of evidence in support of Pedro Cruz's Hernandez's claim is his November 2014 affidavit and in that affidavit he is detailing his latest position which is that he didn't know on the night in question that that money was in fact his that that's the suggestion in the affidavit. Until after the police left. Correct but as the district court correctly pointed out in reviewing the record that position the November 2014 affidavit is flatly contradicted by other aspects of the sworn testimony of Pedro Cruz Hernandez where he says he in fact spoke to his brother on the night in question before the police arrived. Does he say before the police arrived? He says on the night in question and he says that his brother spoke to him on the phone and there are other aspects of the case which the sequence events demonstrate that that would have occurred before he met with the police and supposedly according to. Is that clear? I mean because some people are using these vague pronouns here and there when they left that could be the intruders, it could be the police, it could be other people. This was asked of the claimant repeatedly in the deposition and as the district court found in looking at the totality of his statements he gave clear he being Pedro Cruz Hernandez gave clear statements in his deposition that he understood that night that supposedly at least half of the money was his. That is as the court found to flatly contradicted by what he then said to the police and what he ultimately said in his November affidavit before this court. I do just want to emphasize that the district. What reason was given for the fact that there was this $271,000 in a van? What reason by the claimants? Yeah. That this is this is accumulated savings. I It is in a van because according to claimant Pedro Cruz Hernandez after these armed intruders came into their home in the middle of the night demanding to know where the drugs and the money were that he spoke with his brother and that his brother Abraham directed him to take that safe out of the basement and move it and so Pedro Cruz Hernandez moved it into the van. That's his that's his record repeatedly. So it actually has a reason that it's not sitting there in the house. Right it's it's in response to the armed intruders demanding the drugs and the money. Now there's a reference to two dogs. That's correct there there there are not one but two. These dogs been you know validated? They have there is a Is that in the record? It is there is a footnote that's in the government's summary judgment motion referencing the fact that hundreds of pages concerning these dogs had been tendered and provided in discovery. That was never contested. That was that was not in dispute. The reliability of the dogs. Dog number one alerted to the back of the vehicle and to a door of the vehicle and then the safe was removed. A separate dog came in and then alerted to the location. It turns out both alerts are actually false right? There are no drugs found in the vehicle. It's it's the currency with the ledger inside. Which well. They're not false alerts. There is cocaine that's what they alert to. Well but they the cocaine if there's if there if they have not made a mistake it's cocaine residue on the money. Is that? There would be drug residue. And that's all there is they don't actually find little baggies of cocaine or anything. They they alert to the presence of of drugs in response to what was in the safe and that was currency and the ledger. Right so so the alert at the back of the car where there's no safe is not in response to the presence of any drugs in the back of the car. It's in response. There's residue there for all I know but there's no there are no drugs there. Correct it's in response to the safe being in the back of the van. And what about the other alert? Then the safe is removed put into an unbiased area in the backyard. And the dog alerts again to the safe. Yes and a separate dog comes in and alerts the safe. But it's all just a residue alert. Correct and so consistent with this court's decision in the 30,000 funds case from 2005 that that those alerts are entitled to probative weight and the court looked at the district court looked at the two drug alerts combined with a range of other circumstantial evidence and found that the government met its burden of proof. What did the defendants or what what are these two guys what did they say was the reason why their why their why their current why their money was smeared with cocaine? They have a theory of that? That hasn't been articulated by the claimants that the government is aware of. Sounds pretty questionable. I personally would agree your honor but I don't know that. You put cocaine on your money. So there are two bases underlying the district court's judgment in this case. One has to do with whether or not the claimants met their requisite preponderance of evidence burden on ownership. The separate alternative basis is whether or not the government met its burden under 983 C. The government submitted to the district court that it met its burden under 983 C. It also submitted to the court the additional alternative basis that the claimants could not meet their requisite burden because there was not evidence of their ownership and the district court granted judgment in favor of the There are no further questions from the court. The government respectfully asked that this court affirm the judgment of the district court. Okay anything further Mr. Zeit? I think you have a small amount of time. Relative to the question of why was there money in the van, my client Abraham was called by Pedro, his brother, after the invaders left and said please move. That was answered by the government's lawyer. Well he said but my client... Look. Yes sir. Where did that cocaine come from? There was no cocaine. Well where were the dogs? I have no idea. There was no cocaine found anywhere in this instance under any circumstance. There was no cocaine found in the safe. There was no cocaine found in the home. There was no cocaine found on any of the inhabitants of the home that were there. But according to your opponent these dogs have you know been certified as as competent sniffers. They may be and I think the contaminated currency issue becomes quite prevalent with this and if there's if the money is contaminated it's not unusual for that to occur. What do you mean not unusual for that? Well I think you'll find it. Have you ever had contaminated money? There's contaminants. Dogs sniffing, barking at you. Have I? Yeah. Not to my knowledge. Well how does a huge quantity of currency get contaminated by cocaine? If it's used in some fashion when somebody else has the money they very well be contaminated under those circumstances. Well under what would be evident, what would indicate that your clients had just happened that their savings, this 271,000, was in contact with cocaine? They didn't trust banks. I'm sorry? They didn't trust banks. Well they clearly didn't trust banks and and they didn't want the money in a bank. They did not trust banks. They didn't want the money in a bank. They wanted the money themselves and one thing I was going to say is that. I know but how did the money how is it that the money was was saturated with cocaine? I have no idea. Your Honor, I can't tell you that. Isn't it very suspicious? I mean you don't have, you probably don't have money in your wallet that's cocaine saturated. Well I have no idea whether I do or I don't. I haven't had it. Dogs barking at you. I'm sorry? I haven't had any, I haven't been around any but the word. No one has alerted you, we understand. All right, well thank you very much Mr. Zeid. Thanks to both counsel. We'll take the case under advisement.